IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN VRATORIC and ELLEN
VRATORIC,

        Plaintiffs,

    v.

STOWE TOWNSHIP, a municipality,
STOWE TOWNSHIP POLICE
DEPARTMENT, CHIEF FRANK
MARCIW, OFFICER MOLLY A.
CONNOLLY, and OFFICER ERICA
MILLER,

        Defendants.

09cv600
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.**     **Introduction**

Plaintiffs Brian Vratoric ("Brian") and Ellen Vratoric ("Ellen"), Brian's mother, bring this eight-count Amended Complaint (doc. no. 33) against defendants Stowe Township[1] ("Stowe"), Stowe Township Chief of Police Frank Marciw ("Marciw"), Stowe Township Police Officer Molly A. Connolly ("Connolly"), and McKees Rock Police Officer Erica Miller ("Miller").[2] Plaintiffs allege the Stowe defendants retaliated against both of them for exercising their First Amendment rights to complain officially about police misconduct, deprived them of their constitutional and civil rights pursuant to a pattern and practice of harassment and abuse, conspired to violate their civil rights, that all defendants used excessive force and committed

---

[1] Stowe Township Police Department was named as a defendant in the initial complaint, but since the Police Department is not a separate legal entity for purposes of section 1983 actions, plaintiffs withdrew the claims against the Police Department. See Order of Court, June 24, 2009 (doc. no. 22).
[2] In their Amended Complaint, plaintiffs sue defendants Marciw, Connolly, and Miller in their individual capacities, as their original complaint suing these defendants in their official capacities was dismissed by this Court's Order of June 24, 2009 (doc. no. 22).

assault and battery against Brian, and intentionally inflicted emotional distress upon him. Plaintiffs seek equitable relief, compensatory damages, and punitive damages.[3]

Defendant Miller has filed a Motion to Dismiss Plaintiffs' Amended Complaint in Part (doc. no. 40) ("Miller Motion to Dismiss") arguing that, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), plaintiff Brian's Fourth Amendment false arrest claim must be dismissed because the criminal charges brought against him as a result of the February 22, 2009 incident were not terminated favorably to him because he entered a plea of *nolo contendere* to those charges, and that plaintiffs' civil conspiracy to deny their civil rights claims fail as a matter of law.

Plaintiffs' Response to the Miller Motion to Dismiss (doc. no. 50) counters that both the Federal Rules of Evidence and Pennsylvania case law treat a *nolo contendere* plea as being an implied admission solely and exclusively for the purposes of the criminal indictment, having no further legal effect, and that plaintiff Brian's false arrest claim is but one of many incidents in a pattern and practice of harassment and police misconduct over a course of five years, including the false arrest but also including excessive force, retaliation for lodging official complaints, verbal and physical intimidation, and unjustified citations

Defendants Stowe, Marciw, and Connolly have filed a Motion to Partially Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6) (doc. no. 42) ("Stowe Defendant's Motion to Dismiss"), arguing that plaintiff Brian's First Amendment retaliation and Fourth Amendment false arrest claims must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because the criminal charges brought against him as a result of the February 22, 2009 incident were not terminated favorably to him because of his *nolo contendere* plea, that his

---

[3] Ellen Vratoric brings only Count Eight in her name explicitly, but alleged injuries to plaintiff Ellen are sprinkled throughout the first seven counts. Although the Amended Complaint is not artfully drawn, it appears that only the excessive force and common law assault and battery claims are related exclusively to Brian.

conspiracy charges fail as a matter of law, and that the retaliation and other claims brought by Ellen fail as a matter of law.

Plaintiffs' Response to the Stowe Defendant's Motion to Dismiss (doc. no. 51) is the same as their Response to the Miller Motion to Dismiss, namely that a plea of *nolo contendere* *do*es not trigger the *Heck* bar plea, and that to the extent plaintiff Brian asserts a claim for false arrest arising from the February 22, 2009 incident, that incident was just one of a continuing and long standing pattern of police retaliation and misconduct for exercising their First Amendment rights.

After careful consideration of the Miller Motion to Dismiss (doc. no. 40) and the Stowe Defendant's Motion to Dismiss Motion to Partially Dismiss (doc. no. 42), plaintiffs' Responses thereto (docs. nos. 50-51), the Court will deny both motions to dismiss for the reasons that follow.

## II. Factual Background

The Court must take the facts as averred in the Amended Complaint to be true, for purposes of a motion to dismiss, and assign all reasonable inferences from those facts to the plaintiffs. Viewed in that light, the Amended Complaint sets forth the events giving rise to plaintiffs' federal constitutional and state common law claims.

In 2004, plaintiff Ellen wrote to the Stowe's Chief of Police, Frank Marciw, complaining that he and his subordinates were harassing Brian and her when they falsely claimed Brian failed to stop at several stop signs. Amended Complaint (doc. no. 33), at ¶ 9. With Brian's authorization, his mother Ellen also wrote about the harassment to Governor Edward Rendell, the FBI, the Pennsylvania Attorney General, the Allegheny County District Attorney, and the Allegheny County Police. Amended Complaint, *id.* at ¶ 10. Plaintiffs allege the Stowe

defendants responded to their official complaints by issuing "retaliatory and baseless citations" to Brian. Amended Complaint, *id.*

Plaintiffs claim that on June 6, 2005, Marciw and a Stowe police officer falsely arrested Brian and then "tortured and beat him" for two to two and a half hours at the Stowe police station, resulting in Brian sustaining a concussion and "permanent brain damage." Amended Complaint, *id.* Plaintiffs subsequently filed a federal civil rights lawsuit against Stowe, Marciw, and two other Stowe police officers, alleging excessive force, retaliation, false arrest and other claims. *Vratoric v. Stowe Township, et al.,* (05-cv-1416). While defendants' summary judgment motion was pending, and three days before the scheduled Pretrial Conference, the Court was notified that the parties had reached a settlement, and that civil rights action was dismissed on November 29, 2006 pursuant to Fed.R.Civ.P. 41(a) and plaintiffs' Stipulation. *Vratoric v. Stowe Township, et al.*, 05-cv-1416 (doc. no. 34). Plaintiffs now allege the harassment did not stop, but in fact escalated after the settlement. Amended Complaint (doc. no. 33) at ¶ 11.

Plaintiffs further allege that, in 2008, Brian was issued another citation from a Stowe police officer for not coming to a complete stop at a stop sign. Amended Complaint, *id.* After pleading not guilty to the charge, Brian's money (apparently seized at the time of the traffic stop and citation) was returned to him through the mail. Amended Complaint, *id.* Plaintiffs claim the Stowe police, on two additional occasions, stopped Brian and searched his vehicle, but ultimately let him go without citation. Amended Complaint, *id.* Plaintiffs assert numerous people have informed Brian that Marciw "wants him dead." Amended Complaint, *id.*

Furthermore, plaintiffs seek redress for another traffic incident on February 22, 2009, at approximately 9:30 a.m., while Brian was on his way to pick a friend up for breakfast; Brian that Brian "heard a siren and immediately pulled over." Amended Complaint *id.* at ¶ 12. After

pulling Brian over, defendant Connelly "got out of her vehicle with her gun drawn," screaming at Brian to lie face down on the ground. *Id.* While Brian lay on the ground, Officer Miller, of the McKees Rocks Police Department, arrived as Connelly's backup. *Id.* Plaintiffs allege Connelly and Miller stood over Brian, handcuffed him, "lifted [Brian] a few inches up off the ground and then slammed his head into the cement." *Id.* Plaintiffs continue that Connelly and Miller lifted [Brian] up again, pushed him over to the police car, bashed his head into the police car then they lifted him off the ground trying to break his arm." *Id.* As defendants placed Brian in the Stowe police car, Brian was told he was going to the Allegheny County jail because he ran five stop signs. *Id.*

Plaintiffs allege William M. Coles ("Coles") witnessed the incident. Amended Complaint, *id.* at ¶ 13. Coles stated Connelly was "staying several car lengths behind Brian Vratoric and as soon as she turned on the siren he immediately pulled over." Amended Complaint, *id.* at ¶ 16. Coles also claims Connelly "was in an extreme rage, screaming and ready to shoot Brian Vratoric" when she got out of her vehicle. *Id.* at 13. Additionally, plaintiffs contend a second witness screamed "'Rodney King all over'" as the alleged incident unfolded. *Id.* Brian asserts Connelly and Miller were directly ordered by Marciw to carry out the alleged acts of violence and that Marciw was "aware that the Plaintiff has preexisting brain injuries." *Id.*

During the ride to the Stowe police station, Brian alleges defendants Connelly and Miller intentionally left his coat in his car and then turned on the air conditioning in the police car to "freeze him." *Id.* at ¶ 14. Plaintiffs further contend that the criminal complaint against Brian took over six hours to write up, was extremely similar to a complaint Marciw wrote up in 2005, and contained false charges including reckless endangerment, fleeing or attempting to elude a police officer, and disorderly conduct. *Id.* at ¶ 15. Plaintiffs assert Brian "had no reason to flee

5

or elude [the Officers], and did not attempt to do so." *Id.* Plaintiffs argue all charges that were not traffic related "were without probable cause and were made solely to harass Brian Vratoric." *Id.* When plaintiff was subsequently released from jail, he went to the emergency room, where he was diagnosed with a concussion and torn rotator cuff. *Id.* at ¶ 17.

On September 8, 2010, plaintiff pleaded *nolo contendere* in the Court of Common Pleas of Allegheny County to eight criminal charges arising from the February 22, 2009 incident: (1) Fleeing or Attempting to Elude Officer in violation of 75 Pa.C.S. § 3733; (2) Recklessly Endangering another Person in violation of 18 Pa.C.S. § 2705; (3) Disorderly Conduct "Obscene Lang/Gest" in violation of 18 Pa.C.S. § 5503(a)(3); (4) Obedience to Traffic Control Devices in violation of 75 Pa.C.S. § 3111(a); (5) Improper Pass on Right in violation of 75 Pa.C.S. § 3304(a)(1); (6) Duties at Stop Sign in violation of 75 Pa.C.S. § 3323(b); (7) Driving Vehicle at Unsafe Speed in violation of 75 Pa.C.S. § 3361; Reckless Driving in violation of 75 Pa.C.S. § 736(A); and (8) Obstructed Window in violation of 75 Pa.C.S. § 4524(b). Brief in Support of Miller Motion to Dismiss (doc. no. 41) at ¶ 5; Brief in Support of Stowe Defendant's Motion to Dismiss (doc. no. 43) at ¶ 5. Plaintiff was sentenced to eighteen months of probation. *Id.*

### III. Applicable Standard of Review

#### A. Federal Rule of Civil Procedure 12(b)(6)

When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court recently has held that, while a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007) (cites and footnote omitted). See also *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (in civil rights, section 1983 context, plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. *Id*. at 1949. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555)); see also *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## IV. Analysis

### A. Motions to Dismiss False Arrest Claim

Plaintiff Brian asserts his section 1983 civil rights claims against defendants Marciw, Connolly, and Miller, in their individual capacities, and against defendant Stowe. While it is apparent that the Amended Complaint states a claim for false arrest arising from the February 22, 2009 incident, there is much more to plaintiffs' civil rights claims. Plaintiffs complain "not of an isolated incident, but of a continuing wrong and never-ending series of incidents specifically intended by Defendants to deprive Plaintiffs of their civil rights." Amended Compaint (doc. no. 33) at ¶ 21. Defendants request this Court to dismiss plaintiffs' Fourth Amendment false arrest claim arising from the February 22, 2009 incident because of Brian's *nolo contendere* plea to the

criminal charges related to that incident under *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that in order to recover damages for false arrest and similar claims under section 1983, a plaintiff must prove that his or her criminal conviction or sentence related to the arrest or other misconduct has been reversed, expunged, declared invalid, or questioned by issuance of writ of habeas corpus). Defendants' argument assumes that plaintiffs' Amended Complaint states a false arrest claim pegged specifically and exclusively to the traffic incident on February 22, 2009.

Under Pennsylvania law, "[t]he cornerstone of a false arrest-false imprisonment claim is that the process used for the arrest was void on its face." *Boykin v. Bloomsburg Univ. of Pa.,* 893 F.Supp. 378, 397 (M.D. Pa. 1995) (citing *Lynch v. Johnston*, 463 A.2d 87, 89 (Pa. Commw. Ct. 1983)). A plaintiff must show "that the arrest was made without probable cause and for an improper purpose." *Id.* (citing *Mendoza v. K-Mart, Inc.,* 587 F.2d 1052, 1059 (10th Cir. 1978)). Showing the charges were not justified is not sufficient. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984 (Pa. Super. Ct. 1997) (citations omitted). Whenever police do not have probable cause to make an arrest, "the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

Probable cause is "conclusively established to exist at the time the arrest was made when there is a guilty plea or conviction." *McGriff v. Vidovich*, 699 A.2d 797, 800 (Pa. Commw. Ct. 1997). A *nolo contendere* plea, under Pennsylvania law, is not an admission of guilt, but a defendant's "consent to be punished as if he were guilty." *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281 (3d Cir. 2006) (citing *United States v. Poellnitz*, 372 F.3d 562, 567-68 (3d Cir. 2004)). Such a plea is "indisputably tantamount to a conviction." *Id.* (quoting *Poellnitz,*

372 F.3d at 566). Therefore, in the present case, when plaintiff Brian pled *nolo contendere* to eight criminal charges arising from his February 22, 2009, arrest, probable cause has been established and Brian's false arrest claim ordinarily would fail, as a matter of law, unless the conviction has been reversed or otherwise vacated or called into question.

> In *Heck v. Humphrey*, the United States Supreme Court held:
>
> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a Federal Court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994).

Where success in a section 1983 damages malicious prosecution action would implicitly question the validity of conviction or the duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence. This prerequisite obtains to claims arising from the plaintiff's investigation and prosecution, whether packaged as substantive due process, false arrest, malicious prosecution or something else. See *Albright v. Oliver*, 510 U.S. 266, 275 (1994) (section 1983 malicious prosecution claim may not be predicated on denial of substantive due process); *Torres v. McLaughlin*, 163 F.3d 169, 172-73 (3d Cir. 1998).

The *Heck* case is instructive that a court must perform two inquiries when evaluating a section 1983 claim arising from an arrest and prosecution. *Burke v. Twp. of Cheltenham*, 2010 WL 3928524, * 5 (E.D.Pa. 2010). First, the court must consider whether the plaintiff's claim "suggests the invalidity of an 'outstanding criminal judgment against the plaintiff'; second, *if* the claim does imply such invalidity, [a court] must dismiss it *unless* the plaintiff can demonstrate

9

'that the conviction or sentence has already been invalidated.'" *Id.* (emphasis in original) (quoting *Heck*, 512 U.S. at 487). Applying the *Heck* case to the various civil rights claims, the *Burke* case held that the arrestee's section 1983 false arrest and unlawful detention claims were barred by *Heck v. Humphrey*, but claims challenging strip searches as unreasonable and an excessive force claim were not barred by *Heck v. Humphrey*.

Here, plaintiff Brian does make a section 1983 false arrest claim, which necessarily implicates the invalidity of his arrest, but his plea of *nolo contendere* to the criminal charges arising from the arrest establish probable cause for the arrest as a matter of law. Because plaintiff has made no showing that the conviction has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus, his false arrest claim, to the extent it is specifically relying on the incident of February 22, 2009, is not cognizable under the *Heck* case.

However, the Amended Complaint is obviously not limited to the specific incident on February 22, 2009. Instead, the Amended Complaint describes a pattern and practice of police harassment and bullying, including excessive force and physical assaults, dating back to 2004. It avers a series of retaliatory and baseless citations, unlawful searches and seizures, harassing conduct around and near plaintiffs' home, and attempts to "set up" plaintiff Brian, and all after plaintiffs made official complaints about defendants' alleged misconduct before it had gotten out of control. While the February 22, 2009 incident is one significant example of the alleged pattern and practice of harassment and misconduct, plaintiffs' Amended Complaint does not state a separate and distinct false arrest claim based on one isolated incident.

Accepting as true the averments of the Amended Complaint, with all reasonable inferences given to plaintiff, this matter is not the typical civil rights case with a claim for false arrest arising from a single incident. Accordingly, the *Heck* case does not preclude plaintiffs

from including allegations of false arrest in their broader claims of First and Fourth Amendment violations, at least not at this stage of the proceedings.

Moreover, the excessive force claims arising from the February 22, 2009 incident are distinct from any false arrest claim, and the *Heck* case does not bar such claims. Therefore, the discovery in this case will involve the incident of February 22, 2009, in any event.

### B. Motions to Dismiss Retaliation Claims

Plaintiffs also assert section 1983 retaliation claims against defendants Marciw, Connolly, and Miller, in their individual capacities, and against defendant Stowe; plaintiffs complain "not of an isolated incident, but of a continuing wrong and never-ending series of [retaliatory] incidents specifically intended by Defendants to deprive Plaintiffs of their civil rights." Amended Complaint, *id.* at ¶ 21. As with the false arrest claims, Defendants argue that the First Amendment retaliation claim must be dismissed to the extent that Mr. Vratoric is claiming that his arrest was the alleged retaliatory act, under the *Heck* doctrine.

A plaintiff asserting a section 1983 First Amendment retaliation claim must show: "(1) that [he] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (citing *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)). The United States Supreme Court has stated that "a significant amount of verbal criticism and challenge directed at police officers" is protected speech. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Additionally, the Court of Appeals for the Third Circuit has noted that "'[t]he Supreme Court has clearly held that prosecution of a citizen in retaliation for nonprovocatively voicing his objection to police conduct impermissibly punishes constitutionally protected

speech.'" *Burke*, *supra* at *11 (quoting *Losch v. Borough of Parksburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984)).

In *Reynolds v. Smythe*, the United States District Court for the Eastern District of Pennsylvania held that a plaintiff's *nolo contendere* plea barred him from successfully establishing a section 1983 First Amendment retaliation claim because the plea in that case necessarily meant plaintiff could not establish the first element – protected activity. 418 F. Supp. 2d 724, 732 (E.D. Pa. 2006). The court explained that Reynolds' "conviction preclud[ed] [him] from claiming that he . . . engaged in protected activity during the [incident in question]." *Id.* at 732.

In the *Reynolds* case, an altercation ensued between police and Reynolds, resulting in several criminal charges being filed against the plaintiff. *Id.* at 726. The police chief agreed to drop the charges against Reynolds so that he could pursue an education without criminal charges on his record. *Id.* at 727. When the plaintiff later sued the police chief and officers involved for false arrest and excessive force, among other claims, the police chief reinstated the criminal charges. *Id.* The plaintiff then asserted a First Amendment retaliation claim, but later pled *nolo contendere* to unrelated criminal charges, as well as to the initial criminal charges related to the incident in question. *Id.* at 728. Although Reynolds argued that he was confused as to the charges to which he was pleading *nolo contendere*, the court held that the *nolo contendere* plea to the initial set of criminal charges could not be collaterally attacked in the civil rights case, and barred him from recovering monetary damages for retaliation under the *Heck* doctrine. *Id.* at 732.

The *Reynolds* case is unusual, and plaintiffs' case bears little resemblance to it. Plaintiffs do not complain of a single incident of retaliation in connection with the February 22, 2009

incident, but rather, assert a continuing wrong and "never-ending series" of retaliatory incidents specifically intended by Defendants to punish plaintiffs for exercising their First Amendment rights, and to deprive them of their civil rights. In light of the liberal pleading standards applied at the motion to dismiss stage, with all reasonable inferences being drawn in favor of the non-moving party, plaintiffs' First Amendment retaliation claims state a plausible claim for relief and satisfy the requisite elements of a section 1983 First Amendment retaliation claim. Accordingly, this Court will deny defendants' motion to dismiss the retaliation claims.

### C. Ellen Vratoric's Claims

The Stowe defendants argue that plaintiff Ellen's section 1983 First Amendment retaliation claims must be dismissed because Marciw and Connolly did not individually participate in the alleged constitutional violations and because Ellen "has failed to sufficiently state a First Amendment retaliation claim" as her allegations "do not sufficiently identify what she actually did or when she engaged in protected activity." Brief in Support of Stowe Defendant's Motion to Dismiss (doc. no. 43), at ¶ 29, 30. Defendants argue Ellen's First Amendment claim for deprivation of free speech "has failed to state any allegations in support of this claim so that Defendants are unaware of how, why, and or when they allegedly violated her attempted exercise of free speech." *Id.* at ¶ 34.

While the Amended Complaint might have been more detailed, the Amended Complaint adequately outlines Ellen's complaints to Stowe Township officials, the Pennsylvania Attorney General, and other law enforcement authorities about Stowe Township police officers allegedly harassing, abusing, and using excessive force on her son Brian, and then lists several events where Ellen claims police retaliated against her for making such complaints. Specifically, the Amended Complaint alleges Ellen has been followed by Stowe police, has had spotlights shown
13

through her windows at night, and has had friends and associates of defendant Marciw regularly park in her driveway and knock on her door to harass and intimidate her, and plaintiff Brian has overheard Stowe police officers discussing how to "get rid of" Ellen. *Id.*

This Court accepts as true the averments of the Amended Complaint at the motion to dismiss stage, with all reasonable inferences given to plaintiff. It is premature to dismiss plaintiff Ellen's First Amendment retaliation claims and discovery will flesh out the exact dates and circumstances of the alleged incidents. Accordingly, this Court will deny defendants' motions to dismiss Ellen's claims.

### D. Motion to Dismiss Conspiracy Claims

Defendants argue that all claims alleging civil conspiracy pursuant to sections 1985 and 1986 must be dismissed because plaintiffs have failed to allege any facts in support of a conspiracy and agreement to deprive them of their civil rights. A conspiracy involves a "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 996 F.Supp. 379, 385 (D.N.J. 1998) (citing *Darr v. Wolfe*, 767 F.2d 79, 80 (3d Cir. 1985); *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974)).

A conspiracy claim under 42 U.S.C. § 1985(3) has four elements: (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen. In addition, the conspiracy must be motivated by some class-based animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir.2007) (citations omitted).

Section 1986 is a companion to Section 1985(3) and provides a cause of action against persons who, knowing that a violation of § 1985(3) is about to be committed and possessing the power to prevent its occurrence, fail to take action to frustrate its execution. *Rogin v. Bensalem Tp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 1981). "[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).

Defendants argue that nothing in the Amended Complaint suggests Plaintiffs are members of a protected or suspect class, and therefore their section 1985 and section 1986 claims fail as a matter of law. Plaintiffs respond that there are ample allegations of agreement and overt acts by all defendants, acts which are part of a continuous effort of harassment, intimidation, and threats.

This Court finds it premature to dismiss plaintiffs' civil conspiracy claims under sections 1985 and 1986 claims at this stage of the pleadings, especially in light of the continuation of the suit on the other claims. Accordingly, this Court will also deny defendants' motion to dismiss plaintiffs' section 1985 and 1986 claims.

**ORDER OF COURT**

For the reasons set forth above, the Court HEREBY DENIES defendants' Motions to Dismiss (docs. nos. 40 and 42) plaintiffs' Amended Complaint in part.

SO ORDERED this 16th day of November, 2010

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF registered counsel